STATE OF NORTH CAROLINA v. JEFFREY LEE BARRETT

No. 255A93

(Filed 10 May 1996)

### 1. Homicide § 266 (NCI4th)— armed robbery—felony murder—sufficiency of evidence

There was sufficient evidence of armed robbery to support defendant's conviction of felony murder of Michael Turner where the State presented evidence tending to show that defendant and his companions planned to sell fake cocaine to the victim and his brother at a used car lot; the victim had a bag of money in his possession when he exited a van at the car lot; this bag was not found when the victim's body was discovered at the door of the car lot office a short time later; defendant was last seen standing next to the victim just before a gunshot was heard; the victim died from a gunshot wound to the head; and the gun was placed firmly against the victim's skull when it was fired.

Am Jur 2d, Homicide § 442.

### 2. Homicide § 226 (NCI4th)— first-degree murder—premeditation and deliberation—defendant as shooter—sufficiency of evidence

The jury could infer from the evidence that defendant shot the victim so as to support his conviction of first-degree murder under the theory of premeditation and deliberation where the State's evidence tended to show that defendant and his companions planned to sell fake cocaine to the victim and his brother at a used car lot; defendant was seen standing next to the victim seconds before a shot was heard; the victim died from a gunshot wound made with the gun placed firmly against his head; when the shot was fired one of defendant's companions was inside the car lot office with the victim's brother and defendant's other companion was pursuing a friend of the victim who fled the scene; the victim was found with his back against the open screen door of the office, and the victim's brother was shot in the office; and the victim and his brother were not shot with the same gun.

Am Jur 2d, Homicide § 286.

Admissibility of testimony that bullet could or might have come from particular gun. 31 ALR4th 486.

**3. Homicide § 374 (NCI4th)— first-degree murder—acting in concert—constructive presence—sufficiency of evidence**

The State's evidence was sufficient for the jury to find that defendant was constructively present at the time of the killing of Mitchell Turner so as to support his conviction of first-degree premeditated and deliberated murder under the theory of acting in concert where the evidence tended to show that defendant and his two companions (an older man and a tall man) planned to sell fake cocaine to the victim and his brother at a used car lot; the victim intended to test the powder to determine if it was cocaine; at defendant's suggestion, defendant, the tall man, the victim's brother and a friend of the victim left the car lot and went about a mile and a half from the crime scene to buy baking soda for use in the testing, although defendant had baking soda with him; the older man stayed at the car lot office with the victim; on the ride back from the store, defendant suggested that they not return directly to the car lot; upon arriving at the car lot, defendant attempted to hamper the return of the victim's brother to the office; defendant expressed no surprise at seeing a powdery substance strewn outside the office; and the victim was shot in the back and in the lower abdominal region. The jury could infer from this evidence that defendant and his companions decided to kill the victim and his brother when it became apparent that the victim intended to test the powder and that defendant provided assistance to the older man by momentarily removing the victim's brother and his friend from the scene and by returning to provide a means for the men to flee the scene.

**Am Jur 2d, Criminal Law §§ 168-171; Homicide §§ 28, 29, 445.**

**4. Homicide § 267 (NCI4th)— killing during robbery—guilt of robbery—guilt of felony murder**

The State's evidence was sufficient to support defendant's conviction of felony murder of Mitchell Turner where it tended to show that defendant was guilty of armed robbery and that the victim was killed during perpetration of the robbery. Whether there is sufficient evidence to show that defendant either committed the killing himself, intended that the killing take place or even knew that the killing would take place is irrelevant for purposes of determining defendant's guilt under the felony murder rule.

**Am Jur 2d, Homicide §§ 72-75.**

STATE v. BARRETT

[343 N.C. 164 (1996)]

**Homicide: Criminal liability for death resulting from unlawfully furnishing intoxicating liquor or drugs to another. 32 ALR3d 589.**

**What constitutes termination of felony for purpose of felony-murder rule. 58 ALR3d 851.**

5. **Evidence and Witnesses § 222 (NCI4th)— flight—hearsay testimony—harmless error**

Assuming *arguendo* that the trial court erred by permitting the investigating officer's hearsay testimony on flight that defendant was not found at an address in Richmond, Va. when police arrived there seeking to arrest him for a murder in this state, this error was harmless beyond a reasonable doubt where ample evidence was presented that defendant was not apprehended until almost three years after the murder although defendant was an immediate suspect, and the officer also presented admissible flight evidence that he contacted law enforcement officials in at least two other states in an attempt to find defendant.

**Am Jur 2d, Evidence §§ 532-535.**

6. **Criminal Law § 427 (NCI4th)— capital trial—guilt phase— closing argument—defendant's demeanor—not comment on failure to testify**

The prosecutor's comment on defendant's demeanor in the closing argument of the guilt/innocence phase of a first-degree murder trial did not constitute an improper comment on defendant's failure to testify.

**Am Jur 2d, Trial §§ 577-587.**

**Comment or argument by court or counsel that prosecution evidence is uncontradicted as amounting to improper reference to accused's failure to testify. 14 ALR3d 723.**

**Supreme Court's views as to what comments by prosecuting attorney violate accused's privilege against self-incrimination under Federal Constitution's Fifth Amendment. 99 L. Ed. 2d 926.**

**7. Criminal Law § 427 (NCI4th)— capital trial—closing argument—defendant's knowledge of facts—not comment on failure to testify**

The prosecutor's comment during his closing argument in a first-degree murder trial that "[t]he only one that knows is that man right there and his two buddies" did not constitute an improper comment on defendant's failure to testify where it is clear that the prosecutor was stating that he could not explain every detail of the crime to the jury and that defendant had failed to refute the State's theory of how the victim was killed.

**Am Jur 2d, Trial §§ 577-587.**

**Comment or argument by court or counsel that prosecution evidence is uncontradicted as amounting to improper reference to accused's failure to testify. 14 ALR3d 723.**

**Supreme Court's views as to what comments by prosecuting attorney violate accused's privilege against self-incrimination under Federal Constitution's Fifth Amendment. 99 L. Ed. 2d 926.**

**8. Criminal Law § 442 (NCI4th)— capital trial—closing argument—comment on seriousness of crimes and jury's duty**

The prosecutor's closing argument in a trial for two first-degree murders did not impermissibly urge guilty verdicts based on general deterrence and community fear of crime; rather, the prosecutor was commenting on the seriousness of the crimes and the importance of the jury's duty, and there was no gross impropriety in these comments which required the trial court to intervene *ex mero motu.*

**Am Jur 2d, Trial §§ 567-569.**

**Prejudicial effect of prosecuting attorney's argument to jury that people of city, county, or community want or expect a conviction. 85 ALR2d 1132.**

**9. Criminal Law § 1312 (NCI4th)— capital sentencing—good character evidence—rebuttal by prior bad acts**

The State could properly cross-examine defendant's mother in a capital sentencing proceeding about rumors that defendant had killed two other persons and wounded a third person in order

to rebut evidence of good character presented by defendant through the testimony of his mother.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**10. Criminal Law § 454 (NCI4th)— capital sentencing—closing argument—biblical references—harmless error**

Assuming *arguendo* that it was improper for the prosecutor to argue in a capital sentencing proceeding that defendant violated the laws of nature established by God when he, rather than God, decided the time and place of the victims' deaths and that this error implicates defendant's constitutional rights, the error was harmless beyond a reasonable doubt where there was overwhelming evidence of defendant's guilt and where the prosecutor's remarks were made in anticipation of contrasting biblical arguments made by defense counsel.

**Am Jur 2d, Trial § 572.**

**11. Criminal Law § 1373 (NCI4th)— death sentences not disproportionate**

Sentences of death imposed upon defendant for two first-degree murders were not excessive or disproportionate to the penalty imposed in similar cases where the jury found the course of conduct and pecuniary gain aggravating circumstances for each murder; no juror found the existence of any mitigating circumstance; and the evidence showed that defendant and his companions planned to sell fake cocaine to the victims, the victims indicated an intent to test the substance to determine if it was cocaine, and defendant shot one victim and one of his companions shot the second victim in order to steal money possessed by the victims.

**Am Jur 2d, Criminal Law § 628.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was committed for pecuniary gain, as consideration or in expectation of receiving something of monetary value, and the like—post-*Gregg* cases. 66 ALR4th 417.**

**Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed or carried out. 90 L. Ed. 2d 1001.**

STATE v. BARRETT

[343 N.C. 164 (1996)]

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from two judgments imposing sentences of death entered by Albright, J., at the 10 May 1993 Criminal Session of Superior Court, Northampton County, upon jury verdicts of guilty of first-degree murder. Heard in the Supreme Court 8 May 1995.

*Michael F. Easley, Attorney General, by Ellen B. Scouten, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant-appellant.*

FRYE, Justice.

Defendant, Jeffrey Lee Barrett, was indicted for two counts of first-degree murder and one count of robbery with a dangerous weapon [hereinafter armed robbery]. He was tried capitally. The jury returned verdicts of guilty on both counts of first-degree murder based on theories of premeditation and deliberation and felony murder. Defendant was also found guilty of the felony of armed robbery.

After a capital sentencing proceeding conducted pursuant to N.C.G.S. § 15A-2000, the jury recommended death for both first-degree murder convictions. As to both first-degree murder convictions, the jury found as aggravating circumstances that the murders were committed for pecuniary gain and that each murder was part of a course of conduct of other crimes of violence against another person. No juror found any mitigating circumstances. The trial judge arrested judgment as to the armed robbery conviction and, in accordance with the jury recommendation, imposed sentences of death for each of the murder convictions.

Defendant makes thirteen arguments on appeal to this Court. We reject each of these arguments and conclude that defendant's trial and capital sentencing proceeding were free of prejudicial error and that the death sentences are not disproportionate. Accordingly, we uphold defendant's convictions for first-degree murder and sentences of death.

The State's evidence at trial tended to show the following facts and circumstances: On 5 August 1989, defendant offered to sell

STATE v. BARRETT

[343 N.C. 164 (1996)]

Mitchell Turner a kilogram of cocaine for $17,000. The going price for this amount of cocaine was between $27,000 and $30,000. The men decided to exchange the cocaine for the money on 6 August 1989 at Turner's Auto Sales (the car lot), a business owned by Lawrence Turner, father of the victims Mitchell and Michael Turner. On the way to meet defendant, Mitchell picked up McGarrett Clanton, told him of the deal, and stated that he wanted Clanton to come along so that he could "cook the cocaine" to determine if it was real.

Mitchell and Clanton met defendant and two other men, who were described by witnesses as a tall man and an older man, at the car lot. Defendant and his companions arrived in a red T-1000 Pontiac automobile. The men decided to go inside to transact their business. Defendant asked where the money was, and Mitchell informed him that his brother Michael would be bringing it later. Once inside, defendant stated that he was uncomfortable and asked Mitchell to go with him to the woods to make the deal. Mitchell suggested that they go to the house of Ella Williams (Mitchell's girlfriend). Mitchell then called his brother Michael with instructions to meet them at Williams' house with the money.

Defendant and his companions travelled in the red Pontiac, while Clanton and Mitchell took Mitchell's Chevy Blazer truck. After arriving at Williams' house, defendant and Mitchell went into the bedroom, while Clanton and the other two men waited in the living room. After two or three minutes, Mitchell and defendant left the bedroom and exited the house through the back door. After a while, Mitchell and defendant reentered the house, and all of the men left the house. Mitchell and defendant did not transact the deal at Williams' house and returned to the car lot. As they drove back to the car lot, Mitchell told Clanton that defendant was trying to fool them. Mitchell again phoned Michael and made him aware of the change in plans.

When defendant and his companions drove into the car lot, defendant parked the Pontiac automobile so that it was facing the street. The men then entered the office. Not long after they were in the office, Michael arrived in a burgundy van. Once inside, Mitchell decided they needed to buy some baking soda, an ingredient needed to test the cocaine. Defendant suggested that he and the tall man accompany Clanton and Michael to purchase the baking soda, leaving Mitchell and the older man in the car lot office. Defendant, Clanton, Michael, and the tall man travelled in the burgundy van to Brookhaven Shop and Wash, a store located approximately a mile and

STATE v. BARRETT

[343 N.C. 164 (1996)]

a half from the car lot. As they drove to the store, Clanton noticed a clear plastic bag containing money between the front seats of the van.

After purchasing the baking soda and a beer, defendant, the tall man, Clanton, and Michael headed back towards the car lot. Defendant asked Michael, who was driving, to turn off the road. Michael refused to do so. As they approached the car lot, defendant requested that Michael continue past the car lot. Ignoring defendant's request, Michael turned into the car lot and parked the van so that it faced the office door.

Defendant exited the van first and proceeded to the front of the van, while the tall man went to the passenger side of the Pontiac T-1000 automobile. Michael grabbed the clear plastic bag containing money, and he and Clanton exited the van. Michael and Clanton noticed a white powder on the ground outside the office door. The powder had not been there before they left, and Clanton told Michael that something was wrong. Defendant approached Clanton and Michael and attempted to put his arms around them. He asked Michael to drive him down the road, and Michael again refused. Clanton backed away while Michael took out his key and approached the office. Michael was standing very close to defendant. Clanton turned around and started running away from the car lot. The tall man pursued Clanton. Clanton heard a shot, and when he turned around noticed that the tall man had stopped chasing him. Shortly thereafter, Clanton saw the Pontiac automobile leaving the car lot.

Clanton ran to the house of Clifford Joyner and requested a ride to Turner's Grocery, another business owned by the victims' family. Upon arriving at the grocery store, Clanton told Randy Turner, a brother of the victims, and Mr. and Mrs. Turner, the victims' parents, that he thought Mitchell and Michael were dead. Randy and Mrs. Turner travelled to the car lot where they found the bodies of Michael and Mitchell. Michael was outside of the office with his back against the open screen door, and Mitchell was lying on the floor inside the office. The police, dispatched because of a report of gunfire, arrived while the family was in the office.

When the police entered the office, they found two packages wrapped in duct tape and containing a powdery white substance. One package had been cut open. The substance was found on the floor under Mitchell's body and on the desk. Laboratory tests revealed that the white powdery substance found on the floor and in packages in the office was starch, not cocaine. Police also discovered an electric

frying pan with a liquid in it and a bag from a video rental store in Richmond, Virginia. The bag contained a roll of duct tape and a package of baking soda. Another bag containing a package of baking soda and a beer was found in the burgundy van.

Autopsies revealed that both victims died of gunshot wounds. Michael was shot once in the head, and Mitchell was shot twice, once in the back and once in the lower abdominal region. Michael's wound to the head and Mitchell's wound to the abdomen were made with the gun placed firmly against their skin, while the shot to Mitchell's back was made while Mitchell was bent over. It was not possible to determine which of Mitchell's wounds was inflicted first. The differences in the areas around the two contact wounds, the one to Mitchell's abdomen and the one to Michael's head, suggested that the wounds were caused by different guns.

Defendant did not testify and presented no evidence during the guilt/innocence phase of his trial. Defendant's motion to dismiss, made at the close of the evidence and renewed after the jury verdicts were announced, was denied by the trial court.

As defendant's first argument, he contends that the trial court erred in denying his motion to dismiss because there was insufficient evidence as a matter of law to convict him of the first-degree murders of Mitchell and Michael Turner. We conclude that the evidence was sufficient to go to the jury and to support jury verdicts finding defendant guilty on both counts of murder in the first degree.

On a defendant's motion for dismissal on the ground of insufficiency of the evidence, the trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). What constitutes substantial evidence is a question of law for the court. *Id.* To be "substantial," evidence must be existing and real, not just "seeming or imaginary." *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Vause*, 328 N.C. at 236, 400 S.E.2d at 61. "If there is substantial evidence— whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 382-83 (1988).

STATE v. BARRETT

[343 N.C. 164 (1996)]

In ruling on a motion to dismiss, the trial court must examine the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference and intendment that can be drawn therefrom. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). The determination of the witnesses' credibility is for the jury. *See Locklear*, 322 N.C. at 358, 368 S.E.2d at 383.

"[C]ontradictions and discrepancies do not warrant dismissal of the case—they are for the jury to resolve." *Earnhardt*, 307 N.C. at 67, 296 S.E.2d at 653; *accord State v. Small*, 328 N.C. 175, 180-81, 400 S.E.2d 413, 415-16 (1991), *quoted in State v. Quick*, 329 N.C. 1, 19, 405 S.E.2d 179, 190-91 (1991). " 'The trial court's function is to determine whether the evidence will permit a reasonable inference that the defendant is guilty of the crimes charged.' " *Quick*, 329 N.C. at 19, 405 S.E.2d at 191 (quoting *Vause*, 328 N.C. at 237, 400 S.E.2d at 61).

First, we will address defendant's contention that the trial court erred by denying his motion to dismiss because there was insufficient evidence to find him guilty of first-degree murder for the death of Michael Turner. Defendant was convicted under the theories of both felony murder and premeditation and deliberation. He contends that there was insufficient evidence to convict him under either theory. We disagree.

[1] First, defendant contends that, as to the felony murder theory, there was no evidence presented that he was armed or that he intended to rob the victims. Defendant was found guilty of the felony of armed robbery. This Court has defined armed robbery as "the taking of personal property from the person or presence of another, by the use or threatened use of a dangerous weapon, whereby the victim's life is endangered or threatened." *State v. Rasor*, 319 N.C. 577, 587, 356 S.E.2d 328, 334 (1987); *see also* N.C.G.S. § 14-87(a) (1993).

The State presented evidence that Michael Turner had a bag of money in his possession when he exited the burgundy van. This bag was not found when Michael's body was discovered at the door of the car lot a short time later. Defendant was last seen standing next to Michael just before a gunshot was heard. The autopsy revealed that Michael died from a gunshot wound to the head and that the gun was placed firmly against his skull when it was fired. From this evidence, a jury could reasonably infer that defendant had a gun which he placed against Michael's skull and that he took the bag containing the money either shortly before or immediately after he shot the victim. This certainly is sufficient evidence to constitute armed robbery.

Accordingly, we conclude that there was sufficient evidence of armed robbery and, therefore, that defendant's conviction under the felony murder rule was proper.

[2] As to the conviction under the theory of premeditation and deliberation, defendant contends that there was no evidence that he shot Michael. The State produced evidence that defendant was seen standing next to Michael seconds before the shot was heard, that Michael's gunshot wound was made with the gun placed firmly against his head, that the tall man was pursuing Clanton and the older man was inside the office with Mitchell when the shot was fired, that Michael was found with his back against the open screen door of the office, and that Michael and Mitchell were not shot with the same gun. A jury could reasonably infer from this evidence that defendant shot Michael at the door of the office.

We now turn to defendant's contention that the trial court erred in denying his motion to dismiss because there was insufficient evidence to convict him of first-degree murder for the death of Mitchell Turner. Defendant was convicted on theories of both premeditation and deliberation and felony murder. Defendant contends that there was insufficient evidence to convict him under either theory. Again, we disagree.

[3] At trial, the judge instructed the jury that it could find defendant guilty under a theory of premeditation and deliberation if it found that defendant had acted in concert with the other two men to murder Mitchell. Defendant argues that the State's evidence was insufficient to show that he was either actually or constructively present at the time of the murder of Mitchell; therefore, he could not have been convicted under a theory of premeditation and deliberation.

In *State v. Wallace*, 104 N.C. App. 498, 410 S.E.2d 226 (1991), *appeal dismissed and disc. rev. denied*, 331 N.C. 290, 416 S.E.2d 398, *cert. denied*, 506 U.S. 915, 121 L. Ed. 2d 241 (1992), our Court of Appeals stated:

> Our Supreme Court in *State v. Williams*, 299 N.C. 652, 263 S.E.2d 774 (1980), specifically delineated two essential elements of acting in concert: 1) presence at the scene of the crime, and 2) acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose. *Williams*, 299 N.C. at 656-57, 263 S.E.2d at 777-78. The presence required for acting in concert can be either actual or constructive.

*State v. Westbrook*, 279 N.C. 18, 41-42, 181 S.E.2d 572, 586 (1971), *vacated in part on other grounds, Westbrook v. North Carolina*, 408 U.S. 939, 33 L. Ed. 2d 761 (1972).

*Wallace*, 104 N.C. App. at 504, 410 S.E.2d at 230. We have stated that "[a] person is constructively present during the commission of a crime if he or she is close enough to be able to render assistance if needed and to encourage the actual perpetration of the crime." *State v. Willis*, 332 N.C. 151, 175, 420 S.E.2d 158, 169 (1992). It should be noted that constructive presence does not require that defendant be physically present at the scene of the crime; that would be actual presence. *See State v. Ruffin*, 90 N.C. App. 712, 370 S.E.2d 279 (1988) (defendant was down the street from the residence when the crime occurred); *State v. Hockett*, 69 N.C. App. 495, 317 S.E.2d 416 (1984) (defendant waited in the car outside the store which was robbed); *State v. Pryor*, 59 N.C. App. 1, 295 S.E.2d 610 (1982) (defendant dropped the codefendants off at the store to be robbed, drove some three miles, came back, and picked them up); *State v. Torain*, 20 N.C. App. 69, 200 S.E.2d 665 (1973) (defendant dropped codefendants off at country store, stayed with the car, and was later seen with the codefendants and the money), *cert. denied*, 284 N.C. 622, 202 S.E.2d 278 (1974).

In the instant case, defendant left the scene momentarily to go about a mile and a half from the crime scene. It was at defendant's suggestion that he, the tall man, Michael, and Clanton left the car lot to get baking soda despite the fact that defendant already had baking soda with him. On the ride back from the store, defendant suggested that they not return directly to the car lot. Once arriving at the car lot, he again attempted to hamper Michael's return to the office. Defendant expressed no surprise at seeing the powdery substance strewn outside the office. From the evidence, a jury could reasonably infer that defendant was providing assistance to the older man, who he knew was alone inside the office with Mitchell. The jury could infer that the shooting of Mitchell was part of defendant's and his companions' plan. The evidence showed that defendant planned to sell fake cocaine to the victims and that Mitchell intended to test the cocaine to see if it was real. A jury could infer that once it became apparent that the victims intended to test the cocaine, the men decided to kill Mitchell and Michael and that defendant provided assistance to the older man by momentarily removing Clanton and Michael from the scene but by returning to provide a means for the men to flee the scene. Accordingly, we conclude that there was suffi-

cient evidence for a jury to find that defendant was constructively present.

[4] Defendant also alleges that there was no evidence that he had a gun or that he intended to rob anyone; therefore, there was insufficient evidence of armed robbery, the underlying felony for his first-degree murder conviction. As we discussed above, there was sufficient evidence to convict defendant of armed robbery. Since Mitchell was killed during the perpetration of the robbery, "[w]hether there is sufficient evidence to show that the defendant either committed the killing himself, intended that the killing take place or even knew that the killing would take place is irrelevant for purposes of determining defendant's guilt under the felony murder rule." *State v. Reese*, 319 N.C. 110, 145, 353 S.E.2d 352, 372 (1987). Accordingly, we conclude that the trial judge was correct in denying defendant's motion to dismiss.

[5] In his second argument, defendant contends that the trial court committed reversible constitutional error by permitting the prosecutor to introduce inadmissible hearsay on the question of defendant's flight. Detective Wheeler, who was in charge of the investigation, testified that he obtained warrants for defendant's arrest and that he had defendant's name entered into the National Police Information Network so that defendant would be arrested if he was stopped for a traffic violation. He also testified that he talked to a number of law enforcement officials in his attempt to find defendant and that they had difficulty finding defendant. Defendant contends that Detective Wheeler's testimony contained inadmissible hearsay. In support of this contention, he argues that Detective Wheeler, the only witness who testified concerning defendant's alleged flight, did not go to Virginia or Georgia to apprehend defendant; therefore, his testimony was hearsay to the extent that it relied upon the statements of others.

During the exchange between Wheeler and the prosecutor quoted in defendant's brief, the trial court sustained two of defendant's objections and overruled only one. The trial court overruled defendant's objection to Wheeler's statement that defendant was not found at an address in Richmond, Virginia, when police arrived there. Assuming *arguendo* that the admission of this statement was error, we are satisfied that the error was harmless beyond a reasonable doubt. Ample evidence was presented that defendant was not apprehended until 20 May 1992, almost three years after the murder, although defendant was an immediate suspect and had already left

Northampton County for an unknown destination. Wheeler also presented admissible flight evidence that showed that he contacted law enforcement officials in at least two other states in an attempt to find defendant. *See State v. Patterson*, 332 N.C. 409, 420, 420 S.E.2d 98, 104 (1992) (holding that there was no error in the admission of statements by an officer that he had contacted thirteen law enforcement officials in six different states before apprehending defendant). Accordingly, we reject defendant's second argument.

**[6]** Defendant's third and fourth arguments concern the prosecutor's closing argument during the guilt/innocence phase of the trial. First, defendant contends that the prosecutor improperly commented on defendant's failure to testify by making the following statements in closing arguments:

> And ladies and gentlemen of the jury, he does not care. I hope you've watched his demeanor during this trial, how he's been bored with the proceedings, how at times they were comical to him. I submit to you, ladies and gentlemen, he doesn't care about what he did at that car lot on August the 6th, 1989. He didn't care then and he doesn't care now because that doesn't suit him. He does not care.

> We hear [a lot] about rights of defendants. That's what all of this process is about, the rights of the defendants. If defendant's [sic] didn't have certain rights, we wouldn't be here, ladies and gentlemen. And that's what this case is all about. His rights are protected throughout this trial. Mitchell and Michael Turner had no rights on August the 6th, 1989. I submit to you, ladies and gentlemen, that the most important right that any of us have [sic] is the right to live.

Defendant concedes that this Court has held that the State may comment on the demeanor of the defendant during closing arguments of a trial. *State v. Brown*, 320 N.C. 179, 199-200, 358 S.E.2d 1, 15-16, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987). He calls attention, however, to the fact that in the instant case, this argument was made during the guilt/innocence phase of the trial, while in *Brown* the argument was made during the capital sentencing phase. Defendant notes that the jury may consider the remorse of the defendant during the sentencing phase as a mitigating circumstance, and therefore, an argument made during the sentencing phase regarding the defendant's demeanor is proper for showing lack of remorse. However, he continues, during the guilt/innocence phase, the argument simply

draws attention to the fact that defendant did not testify at trial; therefore, it violates the defendant's right not to testify.

In *Brown*, we relied on *State v. Myers*, 299 N.C. 671, 680, 263 S.E.2d 768, 774 (1980), which held that prosecutorial statements made during closing arguments regarding defendant's demeanor were admissible. While noting that the State is given wide latitude during closing arguments, this Court said that the demeanor of the defendant was before the jury at all times. *Id.* Accordingly, we see no reason to distinguish between arguments regarding the defendant's demeanor that are made during the sentencing proceeding and those made during the guilt/innocence phase.

We hold that the State's argument was not a comment on defendant's failure to testify. As we stated in *State v. Rouse*, 339 N.C. 59, 451 S.E.2d 543 (1994), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 60 (1995), "[a] prosecutor violates [this rule] if 'the language used [was] manifestly intended to be, or was of such character that the jury would naturally and necessarily take it to be[,] a comment on the failure of the accused to testify.' " *Id.* at 95-96, 451 S.E.2d at 563 (quoting *United States v. Anderson*, 481 F.2d 685, 701 (4th Cir. 1973), *aff'd*, 417 U.S. 211, 41 L. Ed. 2d 20 (1974)). A comment on the defendant's demeanor does not naturally or necessarily amount to a comment on the failure of the accused to take the stand. Accordingly, we reject defendant's contention.

[7] Defendant also assigns error to a later portion of the prosecutor's closing argument on the basis that it was a comment on defendant's failure to testify. The prosecutor argued:

> I can't tell you. You know, some things, ladies and gentlemen of the jury, the State of North Carolina is not going to be able to tell you, using your reason and your own common sense. We can say probably what happened, but there are a few things we're not going to be able to say. *The only one that knows is that man right there and his two buddies.*

(Emphasis added.)

Defendant made no objection to this argument at trial. Therefore, this Court's duty is limited as follows:

> Where defendant fails to object to an alleged impropriety in the State's argument and so flag the error for the trial court, "the

STATE v. BARRETT

[343 N.C. 164 (1996)]

impropriety . . . must be gross indeed in order for this court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it."

*State v. Abraham*, 338 N.C. 315, 338, 451 S.E.2d 131, 143 (1994) (quoting *State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979)) (alteration in original). In determining whether the prosecutor's argument was grossly improper, the Court must examine the argument in the context in which it was given and in light of the overall factual circumstances to which it refers. *State v. Alston*, 341 N.C. 198, 461 S.E.2d 687 (1995), *cert. denied*, —— U.S. ——, —— L. Ed. 2d ——, 64 U.S.L.W. 3575 (1996). Before making the comments mentioned by defendant, the prosecutor argued:

> Where were the keys—where were Michael's keys? The keys to the van were scattered right here. Right down there. You saw the pictures of the keys to the van, ladies and gentlemen of the jury. You didn't see the keys. Right down there is [sic] the keys. Right down there where Dr. Ziph said he'd been killed instantly. Instantly killed, ladies and gentlemen of the jury. Instantly killed. And don't you know that when he got popped with a bullet through his brain, he didn't do anything but drop as that bullet went through his brain, curtsey [sic] of defendant. Michael with the keys—would Michael have been inside the office? I submit to you nobody knows, but I submit to you that he was getting ready to poke them in or perhaps put them in when the door got kicked in and then went into the door and fell out. I can't tell you . . . .

From examining the prosecutor's argument in context, it is clear that he was stating that he could not explain every detail of the crime to the jury and that defendant had failed to refute the State's theory of how Michael was killed. This Court has held that the prosecutor can comment on the defendant's failure to present evidence that refutes the State's theory of the case and that such an argument is not a comment on the defendant's failure to testify. *State v. Taylor*, 337 N.C. 597, 613, 447 S.E.2d 360, 370-71 (1994); *State v. Morston*, 336 N.C. 381, 406, 445 S.E.2d 1, 15 (1994); *State v. Mason*, 315 N.C. 724, 732, 340 S.E.2d 430, 436 (1986). Clearly, there was no gross impropriety in the prosecutor's argument.

[8] Defendant next assigns error to another portion of the prosecution's closing statement. The prosecutor first argued:

STATE v. BARRETT

[343 N.C. 164 (1996)]

Members of the jury, when you go back into the jury room, I ask that you think of these events as something that you have seen on television. You see these things in movies. You see them on news reports happening in big cities. But; this is something real, ladies and gentlemen, it is reality. This, ladies and gentlemen, is reality. This is a reality that took place on August the 6th, 1989 at Turners' Car Lot. This is reality. This is real. This is not a T.V. movie with special effects. This is real. This is reality, ladies and gentlemen. This is the reality of what took place at Turner's Auto on August the 6th, 1989. These are the real clothes that real people wore as they were gunned downed [sic] on that Sunday afternoon. So, don't think of it as something that is not real. This is real. This is as real as it gets, ladies and gentlemen, I submit to you. Mrs. Virginia Turner, ladies and gentlemen, had five children when she went to work on August the 6th, 1989. Five children. Mr. Turner had five children as he prepared to get ready to go to church that afternoon. Nancy Turner Garner had four brothers as she arose that morning to take care of her day's business. Shorty and Randy had two other brothers as they got up to take case of their personal affairs on that day. But, because of this man sitting right over here, the man famous for his gold teeth and his white tee shirts, that is gone now. Killing Mitchell and Michael Turner helped him accomplish his goal of stealing thirty four thousand dollars. Helped him fulfill his agenda that he had money for August the 6th of 1989.

. . . .

Many times you hear about events like this, shootings, murders and you say, well somebody ought to do something about that. Well, ladies and gentlemen, you are that somebody that everybody talks about. Today you speak for the people of Northampton County. You are Northampton County. Today you send a message, a thunderous message, to those who would even think of coming to this county and committing acts like the defendant and his friends did on August the 6th, 1989. The buck stops here, ladies and gentlemen, and you cannot pass it along. It's in your laps. The police can't do anymore, the Judge can do no more. It's up to you to decide.

Defendant contends that the purpose of this argument was to appeal to the sympathy and fears of the jury rather than to appeal to reason. He argues that in the preceding portion of the prosecutor's

closing argument, the prosecutor impermissibly urged guilty verdicts based on general deterrence and community fear of crime. Defendant also argues that the second prosecutor reenforced this theory of general deterrence and community fear by arguing:

> Ladies and gentlemen of the jury, the State of North Carolina—the State of North Carolina is not a big thing. What it amounts to is the District Attorney, is me[,] elected by the people of Hertford, Bertie and Northampton County.

Again, we note that defendant did not object at trial to these arguments. It is well established that "[c]ontrol of closing arguments is in the discretion of the trial court." *State v. Green*, 336 N.C. 142, 186, 443 S.E.2d 14, 39-40, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 547 (1994). Moreover, "[b]ecause defendant did not object to the portions of the argument to which he now assigns error, 'review is limited to an examination of whether the argument was so grossly improper that the trial [court] abused [its] discretion in failing to intervene *ex mero motu.*' " *State v. McNeil*, 324 N.C. 33, 48, 375 S.E.2d 909, 918 (1989) (quoting *State v. Gladden*, 315 N.C. 398, 417, 340 S.E.2d 673, 685, *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986)) (alteration in original), *sentence vacated on other grounds*, 494 U.S. 1050, 108 L. Ed. 2d 756 (1990).

After careful examination of the prosecutors' arguments, we conclude that they were not grossly improper. The first prosecutor was commenting on the seriousness of the crime and the importance of the jury's duty. We have previously held that the prosecutor is allowed to argue the seriousness of the crime. *See State v. Jones*, 339 N.C. 114, 451 S.E.2d 826 (1994), *cert. denied*, —— U.S. ——, 132 L. Ed. 2d 873 (1995); *State v. Artis*, 325 N.C. 278, 329, 384 S.E.2d 470, 499 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990); *State v. Brown*, 320 N.C. 179, 203, 358 S.E.2d 1, 18. It should also be noted that, in another part of his argument, the prosecutor reminded the jury that it was not to base the verdict on sympathy. Accordingly, we conclude that the prosecutors' comments were not grossly improper and that the trial court did not abuse its discretion in not intervening *ex mero motu.* Therefore, we reject defendant's argument.

Defendant next contends that he is entitled to a new sentencing proceeding because of alleged errors committed during his capital sentencing proceeding. Defendant's first argument is contingent upon this Court finding the evidence insufficient to convict him of the mur-

der of Mitchell Turner. Since this Court has found that the evidence was sufficient to convict defendant of the murder of Mitchell Turner, we need not address this argument.

**[9]** Defendant next argues that the trial court committed reversible error by permitting the State to produce evidence of defendant's prior offenses. During the sentencing phase, on cross-examination, the State questioned defendant's mother about prior bad acts of defendant. Defendant objected, stating that it was improper character evidence. The questions were allowed over defendant's objections. Defendant contends now that the submission of evidence regarding his prior criminal behavior was improper. We disagree.

This Court has held that the State, during the capital sentencing proceeding, may introduce evidence of prior bad acts where the defendant presents testimony of his good character. *State v. Williams*, 339 N.C. 1, 50, 452 S.E.2d 245, 274 (1994), *cert. denied,* —— U.S. ——, 133 L. Ed. 2d 61 (1995); *State v. Silhan*, 302 N.C. 223, 273, 275 S.E.2d 450, 484 (1981). In the instant case, defendant's mother testified on direct examination that defendant was basically a good child who began to have problems with drug abuse because his father was absent. She stated that, despite these problems, defendant was not a murderer. The State, on cross-examination, questioned defendant's mother about rumors that defendant had killed two other people as well as wounded a third person. The evidence was being presented to rebut evidence of good character that was presented by defendant through the testimony of his mother. Accordingly, the trial court did not err by admitting this evidence.

**[10]** As defendant's third argument concerning the capital sentencing proceeding, he argues that the trial court erred in allowing the prosecutor to make biblical arguments during closing arguments. The prosecutor argued:

> You know the Almighty established certain laws of nature. There was a time to be born, there was a time to live, and there's a time to die. All in nature's way. All in nature's way. How dare Jeffrey Lee Barrett defy the laws of nature.
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Overruled.
>
> How dare he defy the laws established by the Almighty. Just imagine, ladies and gentlemen of the jury, how Michael Turner

STATE v. BARRETT

[343 N.C. 164 (1996)]

must have felt as this now convicted murder said to him, "I have decided that you will die. I have decided that you will die because it suits my purposes." Not God's purpose, not nature's purpose, but mine. I have decided. I've decided the manner in which you will die. I have decided the place which you will die. I have decided the time in which you will die. Not God, not nature, but me."

Imagine how Mitchell Turner must have felt as Barrett's partner said the same words to him. How dare Jeffrey Barrett play God and snuff the life of two brothers. Two sons. Contrary to the laws of nature.

In *State v. Artis*, 325 N.C. 278, 384 S.E.2d 470, we stated:

Neither the "law" nor the "facts in evidence" include biblical passages, and, strictly speaking, it is improper for a party either to base or to color his arguments with such extraneous material. However, this Court has repeatedly noted the wide latitude allowed counsel in arguing hotly contested cases, and it has found biblical arguments to fall within permissible margins more often than not. This Court has distinguished as improper remarks that state law is divinely inspired or that law officers are "ordained" by God.

*Id.* at 331, 384 S.E.2d at 500.

Defendant contends that the prosecutor argued that the State law is divinely inspired and, therefore, that the argument was improper. The argument in the instant case does not contain the extensive references to religion, including copious readings from the Bible urging that murderers be put to death, against which we have cautioned in the past. *See id.* (amalgamation of biblical language and statutory citation swings close to impropriety of saying the law of the State codifies divine law); *see also, State v. Walls*, 342 N.C. 1, 61, 463 S.E.2d 738, 770 (1995) (prosecutor's argument not improper where prosecutor clearly informed jury to make its capital sentencing decision based on the statute and not the Bible); *cf. State v. Moose*, 310 NC 482, 501, 313 S.E.2d 507, 519-20 (1984) (argument that the power of public officials is ordained by God and to resist them is to resist God disapproved).

However, assuming *arguendo* that the prosecutor's argument constitutes error and that the error implicates defendant's constitutional rights, defendant is not entitled to relief even under the consti-

STATE v. BARRETT

[343 N.C. 164 (1996)]

tutional standard of review. N.C.G.S. § 15A-1443(b) (1988). Given the overwhelming evidence of defendant's guilt and because the prosecutor's remarks were made in anticipation of contrasting biblical arguments actually made by defendant, we are convinced that any error was harmless beyond a reasonable doubt.

## PRESERVATION ISSUES

Defendant also raises six additional arguments that he concedes have been decided contrary to his position previously by this Court: (1) the trial court erred by failing to inform jurors of parole eligibility; (2) the trial court erred by denying defendant's motion for individual jury *voir dire*; (3) the trial court's instruction that all the evidence presented in both phases of the trial was competent for the jurors' consideration violated the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; (4) the trial court erred by allowing the prosecutor to comment on defendant's demeanor during closing arguments during the sentencing phase; (5) the trial court's instructions defining the burden of proof applicable to mitigating circumstances violated the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; and (6) the trial court's instructions permitted the jury to reject submitted mitigation on the basis that it had no mitigating value.

Defendant raises these issues for the purpose of permitting this Court to reexamine its prior holdings and also for the purpose of preserving them for any possible further judicial review of this case. We have carefully considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. Accordingly, we reject these arguments.

## PROPORTIONALITY REVIEW

Having concluded that defendant's trial and separate capital sentencing proceeding were free of prejudicial error, we turn to the duties reserved by N.C.G.S. § 15A-2000(d)(2) exclusively for this Court in capital cases. It is our duty in this regard to ascertain: (1) whether the record supports the jury's findings of the aggravating circumstances on which the sentence of death was based; (2) whether the death sentence was entered under the influence of passion, prejudice, or other arbitrary consideration; and (3) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and defendant. N.C.G.S. § 15A-2000(d)(2) (Supp. 1995).

As to both murders, the jury found as aggravating circumstances that the murder was committed for pecuniary gain, N.C.G.S. § 15A-2000(e)(6), and that the murder was part of a course of conduct in which defendant engaged which included the commission of other crimes of violence against another person or persons, N.C.G.S. § 15A-2000(e)(11). None of the jurors found any of the mitigating circumstances. After thoroughly examining the record, transcripts, and briefs in the present case, we conclude that the record fully supports the two aggravating circumstances found by the jury. Further, we find no indication that the sentence of death in this case was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We must turn then to our final statutory duty of proportionality review.

[11] In our proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 895 (1994). We have found the death penalty disproportionate in seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). We conclude that this case is not substantially similar to any case in which this Court has found the death penalty disproportionate in that none of these cases involved a double murder.

It is also proper to compare this case to those where the death sentence was found proportionate. *McCollum*, 334 N.C. at 244, 433 S.E.2d at 164. Although we have repeatedly stated that we review all of the cases in the pool when engaging in our statutory duty, it is worth noting again that "we will not undertake to discuss or cite all of those cases each time we carry out our duty." *Id.* It suffices to say here that we conclude the present case is similar to certain cases in which we have found the death sentence proportionate.

The aggravating circumstances found in this case have been present in other cases where this Court has found the sentence of death proportionate. *See State v. Gardner*, 311 N.C. 489, 319 S.E.2d 591 (1984) (death sentence proportionate in double murder where jury

found course of conduct aggravating circumstance and found that the murders were committed for pecuniary gain), *cert. denied,* 469 U.S. 1230, 84 L. Ed. 2d 369 (1985); *State v. Lawson,* 310 N.C. 632, 314 S.E.2d 493 (1984) (death sentence proportionate where defendant burglarized home and jury found that both murders were committed for pecuniary gain and that they were part of a course of conduct involving violence against another), *cert. denied,* 471 U.S. 1120, 86 L. Ed. 2d 267 (1985). It is also relevant that no juror found the existence of any mitigating circumstances.

After comparing this case to other similar cases as to the crime and the defendant, we conclude that this case has the characteristics of first-degree murders for which we have previously upheld the death penalty as proportionate. Accordingly, we cannot conclude that the death sentences are excessive or disproportionate. Therefore, the judgments of the trial court must be and are left undisturbed.

NO ERROR.