STATE v. JONES

[140 N.C. App. 691 (2000)]

—————

STATE OF NORTH CAROLINA v. SCOT A. JONES

No. COA99-1142

(Filed 5 December 2000)

1. **Motor Vehicles— driving a commercial vehicle while impaired—sufficiency of evidence**

The trial court did not err by failing to grant defendant's motion to dismiss the charge of driving a commercial vehicle while impaired in violation of N.C.G.S. § 20-138.2 even though defendant contends he was not driving a commercial motor vehicle as specified by N.C.G.S. § 20-4.01(3d)(a) at the time of his arrest based on the facts that he was driving the tractor for his own private use and that he had detached the trailer portion of the tractor-trailer, because: (1) defendant used the vehicle in question to haul a load of strawberries from California to North Carolina, establishing that the vehicle was designed or used to transport property, N.C.G.S. § 20-4.01(3d); (2) the weight specified by defendant for the tractor-trailer more than satisfied the statutory requirement that a vehicle have a combined gross vehicle weight rating (GVWR) of 26,001 pounds or more to be considered a commercial motor vehicle; (3) the trailer's weight exceeded the statutory requirement that the GVWR of a Class A commercial motor vehicle's towed unit weigh at least 10,001 pounds; (4) neither the statute defining commercial motor vehicle nor the statute detailing the crime for which defendant was convicted specify that if the vehicle is being used in a private

STATE v. JONES

[140 N.C. App. 691 (2000)]

application at the time of the crime, it is no longer a commercial motor vehicle; and (5) the tractor and trailer were properly considered as one unit for the purpose of determining whether the vehicle was a commercial motor vehicle based on the facts that defendant did not change the nature of the vehicle or what it was designed or used to transport by simply detaching the trailer, nor did detaching the trailer change the vehicle's GVWR.

**2. Appeal and Error— preservation of issues—failure to provide argument in support of contention**

Although defendant contends the trial court erred in a driving a commercial vehicle while impaired case by instructing the jury that the vehicle defendant operated at the time of his arrest was a commercial vehicle, defendant has abandoned this assignment of error because he provides no argument to support his contention as required by N.C. R. App. P. 28(b)(5).

Appeal by defendant from judgment entered 26 May 1999 by Judge Jerry Cash Martin in Superior Court, Surry County. Heard in the Court of Appeals 24 August 2000.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Isaac T. Avery, III, for the State.*

*Franklin Smith for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Scot A. Jones ("defendant") was convicted by a jury of impaired driving in a commercial motor vehicle. The trial court sentenced defendant to a suspended term of forty-five days imprisonment and further ordered him to serve an eighteen-month term of unsupervised probation. From this judgment, defendant appeals.

The evidence presented at trial tended to show the following: While driving cross-country from California to the North Carolina coast, defendant stopped at Brindle's Truck Stop ("Brindle's") in Mount Airy, North Carolina, on the morning of 20 March 1998. Defendant was driving a tractor-trailer loaded with strawberries.

Defendant, feeling ill, visited the local hospital emergency room, where he was diagnosed with acute bronchitis with pleurisy. An emergency room physician prescribed a narcotic for defendant's chest pain and an antibiotic for his bronchial infection. Defendant

filled his prescription and returned to the truck stop, where he fell asleep in his tractor-trailer. Defendant testified at trial that although he had been taking Nyquil (an over-the-counter cold medication containing alcohol) prior to visiting the emergency room, he did not take the cold medication after being seen by the physician.

Defendant testified that he awoke at approximately 8:00 p.m. and was still feeling sick. Defendant stated that he unhooked the trailer portion of his tractor-trailer and drove himself to the hospital. Defendant testified, however, that the wait at the emergency room was too long and he therefore did not see a physician at that time.

On 21 March 1998, at approximately 12:00 a.m., North Carolina State Trooper Dan Kiger ("Trooper Kiger") observed two truck tractors parked outside a bar near Mount Airy. Trooper Kiger noticed the driver of one of the truck tractors climb into his vehicle. While in the process of turning his patrol car around, the trooper observed a set of headlights traveling toward his direction, which he assumed belonged to one of the truck tractors. Trooper Kiger followed the tractor, driven by defendant, and observed it swerving left of center and traveling forty-five miles an hour in a fifty-five mile an hour speed zone. The trooper activated his emergency lights and followed the tractor until it pulled into Brindle's.

Trooper Kiger testified that defendant informed him that he had unhooked his trailer, left it at the truck stop, and visited the bar for only a few minutes. Trooper Kiger noted that he "never heard anything about any treatment or anything like that, nothing other than alcohol."

During the encounter, Trooper Kiger detected an odor of alcohol on defendant's breath. Based on this and other observations, the trooper concluded that defendant had consumed a sufficient quantity of alcohol to be appreciably impaired. As such, the trooper arrested defendant for driving a commercial vehicle while impaired. Trooper Kiger confirmed, through a series of physical assessments, that defendant was indeed impaired. Trooper Kiger also administered an Intoxilyzer test, which indicated that defendant's blood alcohol concentration was .06.

At trial, Trooper Kiger offered testimony concerning the vehicle defendant was driving at the time of his arrest. Specifically, the trooper noted that the vehicle was

what generally people talk, they call transfer truck, tractor trailer truck that you see on the major highways. It, however, did not have a trailer attached to it at that time. It was just what people commonly say bobtail. It had the truck tractor, front axle, two rear axles, large heavy truck, big truck.

Defendant testified that he left the hospital at 12:00 a.m., drove straight to the truck stop, and did not visit a bar. Defendant stated that he told the trooper about his visit to the hospital and even showed him his hospital "paperwork" and medication. Defendant also stated that at the time of his arrest, he was driving a vehicle known as a "[19]96 [] Freightliner condo," which he described as "a little apartment." Defendant noted that the truck had a sink, stove, refrigerator, shower, and bunk beds. Defendant testified that he did not know the exact unloaded weight of his tractor-trailer, but that the tractor-trailer's typical loaded weight was between 78,000 and 79,000 pounds. Defendant affirmed that on the day he was arrested, the tractor-trailer's loaded weight was approximately 70,000 pounds. Defendant testified that without the trailer, the three-axle, ten-wheel tractor weighed between 17,000 and 18,000 pounds.

Defendant moved to dismiss the case at the end of the State's presentation of evidence and at the end of the presentation of all evidence. The trial court denied both motions, finding there was substantial evidence to support each and every element of the charged offense.

Defendant also objected to the court's jury instructions concerning "commercial motor vehicles," arguing that the vehicle in question was not being used as a commercial vehicle at the time of his arrest. Defendant asserted that the truck tractor was being operated in a private manner without its commercial load attached. Finding that simply disconnecting a portion of the vehicle does not alter its nature as defined by our General Statutes, the court denied defendant's objection. The jury returned a guilty verdict, and defendant has appealed.

[1] By his first assignment of error, defendant contends that the trial court erred in failing to grant his motion to dismiss at the close of the State's evidence. As a preliminary issue, we note that because defendant presented evidence below, he has waived his right to challenge the denial of his motion to dismiss made at the close of the State's case-in-chief. N.C. Gen. Stat. § 15-173 (1999); *State v. Franklin*, 327

N.C. 162, 393 S.E.2d 781 (1990). We therefore consider whether the trial court erred in denying defendant's motion to dismiss made following the presentation of all evidence.

In ruling on a motion to dismiss for insufficient evidence, the trial court must examine whether substantial evidence exists to support the essential elements of the charged offense. *State v. Vause*, 328 N.C. 231, 400 S.E.2d 57 (1991). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Scott*, 323 N.C. 350, 353, 372 S.E.2d 572, 575 (1988). The court must examine the evidence in the light most favorable to the State, giving the State the benefit of "every reasonable inference and intendment that can be drawn therefrom." *State v. Barrett*, 343 N.C. 164, 173, 469 S.E.2d 888, 893 (1996) (citation omitted). The court must not grant the motion based on contradictions and discrepancies; "they are for the jury to resolve." *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 653 (1982) (citation omitted). "If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." State v. Locklear, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988) (citation omitted).

Defendant was charged with driving a commercial motor vehicle while impaired.

A person commits the offense of impaired driving in a commercial motor vehicle if he drives a commercial motor vehicle upon any highway, any street, or any public vehicular area within the State:

(1) While under the influence of an impairing substance; or

(2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.04 or more.

N.C. Gen. Stat. § 20-138.2 (Cum. Supp. 1998).

Defendant does not argue on appeal that the State failed to prove he was driving on a public vehicular area, that he was under the influence of an impairing substance, or that he had a blood alcohol concentration of 0.04 or greater. Rather, defendant argues that the court should have dismissed his case because he was not driving a "commercial motor vehicle" at the time of his arrest. We disagree.

Section 20-4.01(3d) of our General Statutes defines a "Commercial Motor Vehicle" as follows:

Any of the following motor vehicles that are designed or used to transport passengers or property:

a. A Class A motor vehicle that has a combined GVWR of at least 26,001 pounds and includes as part of the combination a towed unit that has a GVWR of at least 10,001 pounds.

b. A Class B motor vehicle.

c. A Class C motor vehicle that meets either of the following descriptions:

1. Is designed to transport 16 or more passengers, including the driver.

2. Is transporting hazardous materials and is required to be placarded in accordance with 49 C.F.R. Part 172, Subpart F.

d. Any other motor vehicle included by federal regulation in the definition of commercial motor vehicle pursuant to 49 U.S.C. Appdx. § 2716.

N.C. Gen. Stat. § 20-4.01(3d) (Cum. Supp. 1998).

A "Class A Motor Vehicle" is

[a] combination of motor vehicles that meets either of the following descriptions:

a. Has a combined GVWR of at least 26,001 pounds and includes as part of the combination a towed unit that has a GVWR of at least 10,001 pounds.

b. Has a combined GVWR of less than 26,001 pounds and includes as part of the combination a towed unit that has a GVWR of at least 10,001 pounds.

N.C.G.S. § 20-4.01(2a).

A "Class B Motor Vehicle" is

[a] single motor vehicle that has a GVWR of at least 26,001 pounds [or a] combination of motor vehicles that includes as part of the combination a towing unit that has a GVWR of at least

26,001 pounds and a towed unit that has a GVWR of less than 10,001 pounds.

N.C.G.S. § 20-4.01(2b).

A "Class C Motor Vehicle" is "[a] single motor vehicle not included in Class B" or "[a] combination of motor vehicles not included in Class A or Class B." N.C.G.S. § 20-4.01(2c). A vehicle's "Gross Vehicle Weight Rating" ("GVWR") is "[t]he value specified by the manufacturer as the maximum loaded weight of a vehicle. The GVWR of a combination vehicle is the GVWR of the power unit plus the GVWR of the towed unit or units." N.C.G.S. 20-4.01(12a).

We find that there was sufficient evidence to infer that defendant was driving a "commercial motor vehicle," as specified by section 20-4.01 (3d)(a) of our General Statutes. As noted above, under section 20-4.01(3d)(a), a vehicle is a "commercial motor vehicle" if it is designed or used to transport property and is a "Class A motor vehicle that has a combined GVWR of at least 26,001 pounds and includes as part of the combination a towed unit that has a GVWR of at least 10,001 pounds." N.C.G.S. § 20-401(3d)(a). The evidence at trial revealed that defendant used the vehicle in question to haul a load of strawberries from California to North Carolina. This testimony established that the vehicle was "designed or used" to transport property. Although there was no direct evidence indicating the vehicle's GVWR, defendant himself testified that the typical loaded weight of the tractor-trailer was between 78,000 and 79,000 pounds. The weight specified by defendant more than satisfies the statutory requirement that a vehicle have a combined GVWR of 26,001 pounds or more to be considered a "commercial motor vehicle." Based upon defendant's testimony that the tractor portion of the tractor-trailer weighed between 17,000 and 18,000 pounds and that its typical loaded weight was between 78,000 and 79,000 pounds, a jury could infer that the trailer, the towed unit, weighed at least 61,000 pounds. This weight far exceeds the statutory requirement that the GVWR of a Class A commercial motor vehicle's towed unit weigh at least 10,001 pounds.

Defendant argues on appeal that because he was driving the tractor for his own private use and because he had detached the trailer portion of the tractor-trailer, it was no longer a commercial motor vehicle. We are unpersuaded by this argument for two reasons. First, neither the statute defining "commercial motor vehicle" nor the statute detailing the crime for which defendant was convicted specify that if the vehicle is being used in a private application at the time

of the crime, it is no longer a "commercial motor vehicle." Rather, section 20-4.01(3d) specifies that a vehicle is a "commercial motor vehicle" if the vehicle is *designed or used* to transport passengers or property" and meets other requirements. N.C.G.S. § 20-4.01(3d) (emphasis added). As noted above, there was sufficient evidence to infer that the vehicle in question met the statutory definition of a "commercial motor vehicle."

The second reason we reject defendant's argument is that the tractor and trailer were properly considered as one unit for the purpose of determining whether the vehicle was a "commercial motor vehicle." There was sufficient evidence that the portion of the vehicle driven by defendant was an integral part of a larger, two-part vehicle that was designed to transport property as one unit. Trooper Kiger's testimony established that defendant's vehicle was "what generally people . . . call [a] transfer truck, tractor trailer truck that you see on the major highways. *It, however, did not have a trailer attached to it at that time.*" (Emphasis added). By simply detaching the trailer portion of a tractor-trailer, defendant did not change the nature of the vehicle or what it was designed or used to transport. Nor, did detaching the trailer change the vehicle's GVWR, the maximum loaded weight of the vehicle, which defendant's own testimony established was between 78,000 and 79,000 pounds. We therefore conclude that the court did not err in refusing to grant defendant's motion to dismiss.

[2] By his second assignment of error, defendant contends that the trial court erred in instructing the jury that the vehicle he operated at the time of his arrest was a "commercial vehicle." Although defendant references this assignment of error in his brief to this Court, he provides no argument to support his contention. Defendant has therefore abandoned his second assignment of error on appeal. *See* N.C.R. App. P. 28(b)(5) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.")

Based on the foregoing analysis, we hold that defendant received a fair trial free from prejudicial error.

No error.

Judges WYNN and McGEE concur.