IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-836

Filed: 5 May 2020

Harnett County, Nos. 16CRS054041, 16CRS054036-37

STATE OF NORTH CAROLINA

v.

JOHNATHAN RICKS, Defendant.

Appeal by Defendant from judgment and order entered 17 January 2019 by Judge Claire V. Hill in Harnett County Superior Court. Heard in the Court of Appeals 1 April 2020.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Elizabeth J. Weese, for the State.*
>
> *Kimberly P. Hoppin for Defendant.*

BROOK, Judge.

Johnathan Ricks ("Defendant") appeals from judgment entered upon jury verdicts finding him guilty of three counts of statutory rape of a child, two counts of statutory sex offense with a child, and three counts of taking indecent liberties with a child. Defendant also petitions for a writ of certiorari to review the trial court's order imposing lifetime satellite-based monitoring ("SBM") upon his release from prison. He argues that the trial court's imposition of SBM violates his rights under

the Fourth Amendment to the United States Constitution and the North Carolina Constitution.

## I. Background

## A. Factual Background

N.M. and her cousin J.C. both turned 12 years old in February of 2016. Also in February of 2016, N.M. and J.C. met Defendant while attending a sleepover with their cousins at J.C.'s sister's house. Defendant and N.M.'s sister had gone to school together; N.M.'s sister was 21 years old. Defendant drove to N.M.'s sister's house and told N.M. and J.C. via Kik, a texting app, to come outside. Around 2:00 or 3:00 a.m. on some day in February 2016, N.M. and J.C. went outside, got into Defendant's car, and then N.M. and Defendant had oral and vaginal sex in the car while J.C. stood outside. Then J.C. got in the car and had vaginal sex with Defendant in the back seat while N.M. sat in the front seat. Defendant had vaginal sex with N.M. again, and then J.C. and N.M. both performed oral sex on Defendant. Defendant drove the cousins back to N.M.'s sister's house and they went to sleep.

N.M. and Defendant continued communicating via Kik until August of 2016. Around midnight on 14 August 2016, Defendant told N.M. via Kik to go outside of her house; she did. Defendant was driving a gray Chevrolet Malibu, and N.M. got into the car and went with him to his house down the road. Defendant asked her to perform oral sex on him, which she did, and then they had vaginal sex in the car.

They then went inside his house and had vaginal sex in his bedroom. Defendant drove N.M. home, and, when she got out of his car around 3:30 a.m., her brother was standing in the yard. N.M's brother had known Defendant for about five years and recognized Defendant's car, although he did not see Defendant in the car. N.M.'s brother went inside, woke up their mother, and walked down to Defendant's house to confront him. N.M.'s mother called the police, who arrived about 20 minutes later.

N.M.'s mother took N.M. to the hospital where hospital personnel collected a rape kit, her clothing, vaginal swabs, and pubic hair combings. A sexual assault nurse examiner also interviewed N.M. J.C.'s mother also spoke with law enforcement and a doctor after learning of Defendant's sexual activity with N.M. and J.C. J.C. told her mother that the sexual activity with Defendant had been occurring since February of 2016.

Defendant met voluntarily with law enforcement and provided a DNA sample. He also confirmed that he was born in 1995. Microscopic examinations of N.M.'s vaginal swabs revealed the presence of sperm, and DNA analysis of the swabs revealed that the sperm fraction matched the profile obtained from Defendant.

## B. Procedural History

Defendant was indicted by a Harnett County grand jury for three counts of statutory rape of a child by an adult, three counts of statutory sex offense with a child by an adult, three counts of first-degree kidnapping, and three counts of taking

indecent liberties with a child. He was tried before a jury during the 14 January 2019 session of criminal Superior Court of Harnett County before Judge Hill. Both juvenile victims testified regarding the sexual encounters with Defendant. J.C.'s mother and N.M.'s brother also testified, corroborating the victims' testimony. The State also presented testimony from a state forensic scientist, who had compared Defendant's DNA sample with the DNA collected from N.M.'s rape kit. She testified that Defendant's DNA matched the DNA sample, and that the probability of a random match "is approximately . . . one in 9.42 nonillion in the African-American population." Defendant did not testify.

At the close of the State's evidence, Defendant moved to dismiss the three kidnapping charges, and the trial court granted the motion. The jury returned verdicts of guilty to three counts of statutory rape of a child by an adult, two counts of statutory sex offense with a child, and three counts of indecent liberties with a child. The trial court consolidated the offenses and entered judgment on 17 January 2019, sentencing Defendant to a mandatory term of 300 to 420 months of active imprisonment.

The trial court then ordered Defendant to register as a sex offender for his natural life and enroll in SBM for his natural life based on the convictions for statutory rape and sex offense with a child. Based on the convictions for indecent liberties with a child, the trial court ordered Defendant to register as a sex offender

for 30 years and ordered that the Division of Adult Corrections perform a risk assessment for a determination of SBM.

Defendant entered notice of appeal in open court on 17 January 2019.

## II. Jurisdiction

Appeal from a final judgment of a superior court lies of right with this Court. N.C. Gen. Stat. § 7A-27(b)(1) (2019); *id.* § 15A-1444(a) (2019).

Defendant failed to properly notice appeal from the imposition of SBM under North Carolina Rules of Appellate Procedure, Rule 3. *See State v. Brooks*, 204 N.C. App. 193, 195, 693 S.E.2d 204, 206 (2010) (requiring written notice of appeal filed under N.C. R. App. P. 3 for review of SBM orders). Defendant filed a petition for a writ of certiorari contemporaneously with his appellate brief, seeking review of the order imposing lifetime enrollment in SBM. We consider his petition *infra* part III.B.

## III. Analysis

Defendant contends that the State made improper closing arguments that unfairly and unconstitutionally prejudiced him. Defendant further contends that the trial court erred in imposing lifetime SBM because the State failed to establish that SBM constitutes a reasonable search under the Fourth Amendment. We review each argument in turn.

### A. Closing Arguments

#### i. Standard of Review

Our standard of review of an allegedly improper closing argument depends on whether a defendant timely objected to such remarks.

Generally, where a defendant objects to improper remarks, we review "whether the trial court abused its discretion by failing to sustain the objection." *State v. Jones*, 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002). "In order to assess whether a trial court has abused its discretion when deciding a particular matter, this Court must determine if the ruling could not have been the result of a reasoned decision." *Id.* (internal marks and citation omitted). Even if this is the case, a defendant only receives relief if the challenged "remarks were of such a magnitude that their inclusion prejudiced defendant[.]" *State v. Walters*, 357 N.C. 68, 101, 588 S.E.2d 344, 364 (2003) (citation omitted).

Where a defendant has failed to object to an allegedly improper remark, we review "whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*." *Jones*, 355 N.C. at 133, 558 S.E.2d at 107.

> In other words, the reviewing court must determine whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made.

*Id.* To establish that a remark merited intervention ex mero motu, a "defendant must show that the prosecutor's comments so infected the trial with unfairness that they rendered the conviction fundamentally unfair." *State v. Grooms*, 353 N.C. 50, 81, 540 S.E.2d 713, 732 (2000) (citation omitted).

Our review differs, however, where an improper remark infringes on a criminal defendant's constitutional rights. *State v. Kemmerlin*, 356 N.C. 446, 482, 573 S.E.2d 870, 894 (2002). In such circumstances, the State must show that the error was harmless beyond a reasonable doubt. *Id.* (reviewing for harmless error a prosecutor's comment on a criminal defendant's Sixth Amendment right to a jury trial).

## ii. Merits

Defendant takes issue with several remarks made by the prosecutor; we review each claim in turn.

Defendant first claims that the prosecutor improperly commented on Defendant's exercise of his Fifth Amendment right to not incriminate himself. The prosecutor stated: "If [defense counsel] had some evidence that would present a defense for his client, have no doubt he would have presented that to you." Defense counsel objected to this statement, and the trial court sustained the objection, struck the statement from the record, and instructed the jury to disregard it. Immediately thereafter, the prosecutor said, "Put it this way. If they had a witness or a piece of evidence that contradicted what you heard[,]" and defense counsel objected. The trial

court sustained the objection. The prosecutor then said, "You cannot consider what you did not hear." Defense counsel objected, and the trial court overruled the objection. The prosecutor went on to say,

> You cannot speculate about what people that did not come into court and did not put their hand on the Bible and did not swear to tell you the truth might have said. The evidence you're to consider is what the people on the witness stand said or did not say and what the evidence you heard was, and that's it. That's the evidence that you are to consider in this case. I cannot satisfy an unreasonable doubt.

Defense counsel did not object to these statements.

"A criminal defendant may not be compelled to testify, and any reference by the State regarding his failure to testify is violative of his constitutional right to remain silent." *State v. Larry*, 345 N.C. 497, 524, 481 S.E.2d 907, 922-23 (1997), *cert. denied*, 522 U.S. 917, 118 S. Ct. 304, 139 L. Ed. 2d 234 (1997) (citation omitted). "[A] prosecutor violates this rule if the language used was manifestly intended to be, or was of such character that the jury would naturally and necessarily take it to be, a comment on the failure of the accused to testify." *State v. Barrett*, 343 N.C. 164, 178, 469 S.E.2d 888, 896 (1996) (internal marks and citation omitted). We look at "the argument in the context in which it was given and in light of the overall factual circumstances to which it refers." *Id.* at 179, 469 S.E.2d at 896. "The error may be cured by a withdrawal of the remark or by a statement from the court that it was improper, followed by an instruction to the jury not to consider the failure of the

accused to offer himself as a witness." *State v. McCall*, 286 N.C. 472, 487, 212 S.E.2d 132, 141 (1975). "[T]he sustaining of [an] objection advise[s] the jurors that they should not consider the statement." *Larry*, 345 N.C. at 527, 481 S.E.2d at 924. "The trial court's failure to give a curative instruction after the State's comment on an accused's failure to testify does not call for an automatic reversal[] but requires this Court to determine if the error is harmless beyond a reasonable doubt." *Id.* at 524, 481 S.E.2d at 923.

However,

> [i]t is well established that although the defendant's failure to take the stand and deny the charges against him may not be the subject of comment, the defendant's failure to produce exculpatory evidence or to contradict evidence presented by the State may properly be brought to the jury's attention by the State in its closing argument.

*State v. Taylor*, 337 N.C. 597, 613, 447 S.E.2d 360, 370 (1994). Pointing out to the jury that a defendant has not exercised his or her rights to call witnesses or produce evidence to refute the state's case, for example, does not amount to gross impropriety. *State v. Mason*, 315 N.C. 724, 733, 340 S.E.2d 430, 436 (1986).

Assuming without deciding that they referred to Defendant's exercise of his Fifth Amendment right not to testify, we conclude that the prosecutor's arguments to the jury that they "cannot consider what they did not hear" and could not "speculate about what people that did not come into court and did not put their hand on the

Bible and did not swear to tell you the truth might have said" was harmless beyond a reasonable doubt given the overwhelming evidence presented of Defendant's guilt.

Defendant next contests the portion of the prosecutor's closing argument wherein he said, in reference to the juvenile victims' testimony, the following: "Adults have to bring them into court and ask them to tell a roomful of strangers about these sexual acts to try and prevent them from occurring in the future to others." The trial court overruled Defendant's objection to this comment. Defendant contends that this comment impermissibly (1) criticizes Defendant's exercising his right to a jury trial instead of pleading guilty, and (2) suggests that the juvenile victims had to testify to prevent Defendant from committing further crimes in the future.

"[A] criminal defendant has a constitutional right to plead not guilty and be tried by a jury. Reference by the State to a defendant's failure to plead guilty violates his constitutional right to a jury trial." *Larry*, 345 N.C. at 524, 481 S.E.2d at 923 (internal citations omitted). Assuming without deciding that the prosecutor's comment obliquely refers to Defendant's right to plead not guilty and be tried by a jury, and in light of the overwhelming evidence of guilt presented by the State, we conclude that this error was harmless beyond a reasonable doubt. *Id.* at 526, 481 S.E.2d at 924.

In regard to Defendant's assertion that this comment improperly appealed to the jury's sympathy and prejudice, our Supreme Court has held that specific

deterrence arguments in closing argument are not improper. *State v. Syriani*, 333 N.C. 350, 397, 428 S.E.2d 118, 144 (1993) (concluding prosecutor's comment, "He's killed now. The only way to insure he won't kill again is the death penalty[,]" was not improper). We conclude that the trial court did not abuse its discretion in overruling Defendant's objection to this comment.

Defendant further takes issue with the following line of argument from the prosecutor:

> you can find him guilty of those offenses or you can acquit
> him like the lawyer's going to ask you to do after I'm done
> talking. If you do that, you will tell these girls, I didn't
> believe you. I think you came into court and made these
> things up.

The trial court sustained Defendant's objection to the above comment. The prosecutor then said, "You will be telling them, I think you falsely accused an innocent man of heinous crimes." The trial court sustained Defendant's objection and instructed the jury not to consider that portion of the argument. The prosecutor then said, "You will be telling them it was their fault." Defendant did not object to this statement; we therefore review it to determine whether the trial court erred in failing to intervene ex mero motu.

Defendant contends that this statement "improperly focused the jury's attention on how N.M. and J.C. would interpret a verdict of not guilty rather than more properly focusing the jury's attention on determining whether the State had sufficiently proven the case against Defendant."

Our Supreme Court "has stressed that a jury's decision must be based solely on the evidence presented at trial and the law with respect thereto, and not upon the jury's perceived accountability to the witnesses, to the victim, to the community, or to society in general." *State v. Brown*, 320 N.C. 179, 195-96, 358 S.E.2d 1, 13 (1987). In *Brown*, the prosecutor said:

> Please remember something when you go back in the jury room. The 5th of May, 1984, was the most important day in the life of [the victim]'s family, as well as the most important day for [the defendant]. . . . The family of the victim has no one to turn to but you. You are the triers of the facts. You are justice today. You are justice.

*Id.* at 195, 358 S.E.2d at 13 (second and third alterations in original). Our Supreme Court admonished the prosecutor, observing that "the remarks in question veer toward a disregard of" the general rule against arguments that cloud "the jury's focus . . . upon guilt or innocence," *id.* at 196, 358 S.E.2d at 13 (internal marks and citation omitted), but concluded that "the prosecutor's remark reminding the jury of the victim's family's need for justice" was not so grossly improper as to justify a new trial, *id.*

The prosecutor's statement here—"You will be telling them it was their fault"—"veer[s] toward a disregard of" the general rule against arguments that cloud "the jury's focus . . . upon guilt or innocence[.]" *Id.* (internal marks and citation omitted). However, given the evidence of guilt presented at trial, and as our Supreme

Court concluded in *Brown*, we conclude that the prosecutor's statement was not so grossly improper as to justify a new trial.

Defendant next alleges that the prosecutor presented an argument that was "calculated to mislead or prejudice the jury[,]" by telling the jury, "If you saw that statistical number [one in 9.42 nonillion] and thought there was still a chance that's not the defendant's DNA found in [N.M.], that's an unreasonable doubt." Defendant did not object; we therefore review this statement to determine whether the trial court erred in failing to intervene ex mero motu.

Defendant contends that in making this statement, the prosecutor fell into "the prosecutor's fallacy—that the probability that the DNA at the crime scene came from someone other than the defendant is virtually impossible based on the random match probability." Defendant cites *McDaniel v. Brown*, 558 U.S. 120, 128, 130 S. Ct. 665, 670, 175 L. Ed. 2d 582, 588 (2010), for the definition of the prosecutor's fallacy:

> The prosecutor's fallacy is the assumption that the random match probability is the same as the probability that the defendant was not the source of the DNA sample. . . . In other words, if a juror is told the probability a member of the general population would share the same DNA is 1 in 10,000 (random match probability), and he takes that to mean there is only a 1 in 10,000 chance that someone other than the defendant is the source of the DNA found at the crime scene (source probability), then he has succumbed to the prosecutor's fallacy. It is further error to equate source probability with probability of guilt, unless there is no explanation other than guilt for a person to be the source of crime-scene DNA. This faulty reasoning may result in an erroneous statement that, based on a random match

> probability of 1 in 10,000, there is a 0.01% chance the
> defendant is innocent or a 99.99% chance the defendant is
> guilty.

Defendant contends that the prosecutor's statement encouraged the jury to succumb to the prosecutor's fallacy and therefore was "calculated to mislead" the jury.

At trial, one of the State's testifying forensic scientists testified that DNA collected from N.M.'s rape kit "matches the profile obtained from Jo[h]nathan Ricks." She further testified that the probability of randomly selecting someone from the general population who matched the DNA profile "is approximately . . . one in 9.42 nonillion in the African-American population[.]" Assuming without deciding that the prosecutor's statement improperly conflates "the chance that's not the defendant's DNA found in [N.M.]" with "that statistical number"—the one in 9.42 nonillion chance of a random match—we cannot conclude that the statement "so infected the trial with unfairness that [it] rendered the conviction fundamentally unfair." *Grooms*, 353 N.C. at 81, 540 S.E.2d at 732 (citation omitted).

Finally, Defendant argues that the trial court erred in failing to intervene ex mero motu when the prosecutor said, "The DNA tells the truth. The girls told the truth." Defendant contends that this statement was a "prohibited expression[] of [the prosecutor's] personal opinion about the veracity of evidence and witness credibility."

While "[d]uring a closing argument to the jury an attorney may not . . . express his personal belief as to the truth or falsity of the evidence or as to the guilt or

innocence of the defendant," N.C. Gen. Stat. § 15A-1230(a) (2019), "prosecutors are allowed to argue that the State's witnesses are credible[,]" *State v. Augustine*, 359 N.C. 709, 725, 616 S.E.2d 515, 528 (2005), *cert. denied*, 548 U.S. 925, 126 S. Ct. 2980, 165 L. Ed. 2d 988 (2006). Considering the record as a whole, "we cannot conclude that this comment rises to the level of fundamental unfairness given the evidence presented at trial." *State v. Anderson*, 175 N.C. App. 444, 454, 624 S.E.2d 393, 401 (2006).

The State presented the testimony of both juvenile victims, the testimony of the victims' family members that corroborated their testimony, and the testimony of forensic experts that showed that Defendant's DNA matched the sperm collected from N.M.'s rape kit. In light of this overwhelming evidence of guilt, we cannot say that the prosecutor's comments prejudiced Defendant regardless of the applicable standard of review.

### B. SBM

Defendant filed a petition for a writ of certiorari contemporaneously with his appellate brief, seeking review of the order imposing lifetime enrollment in SBM. In order for this Court to exercise its discretion to allow a writ, "[a] petition for [a] writ [of certiorari] must show merit or that error was probably committed below." *State v. Grundler*, 251 N.C. 177, 189, 111 S.E.2d 1, 9 (1959). For the reasons discussed

below, we conclude that Defendant has shown merit, and we allow Defendant's petition to review his claim.

Defendant asserts that the trial court erred in ordering that Defendant enroll in lifetime SBM upon his release from prison because the State failed to meet its burden of proving the imposition of lifetime SBM is a reasonable search under the Fourth Amendment. *See Grady v. North Carolina ("Grady I")*, 575 U.S. 306, 310, 135 S. Ct. 1368, 1371, 191 L. Ed. 2d 459, 463 (2015) (per curiam) ("The State's [SBM] program is plainly designed to obtain information. And since it does so by physically intruding on a subject's body, it effects a Fourth Amendment search."). There was no hearing regarding the constitutionality of lifetime SBM here; the trial court imposed lifetime SBM without any argument from the parties or evidence from the State. Defendant did not raise any constitutional challenge or otherwise preserve this constitutional claim at any point during his sentencing hearing. He therefore requests that this Court exercise its discretion to invoke Rule 2 of the North Carolina Rules of Appellate Procedure to reach the merits.

For the reasons discussed below, we invoke Rule 2 and vacate the trial court's imposition of lifetime SBM.

### i. Rule 2

Our appellate rules require that "to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion,

stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1) (2019). Defendant concedes that he did not preserve an objection to the constitutionality of the imposition of lifetime SBM. As a general matter, this failure bars appellate review. *See State v. Valentine*, 357 N.C. 512, 525, 591 S.E.2d 846, 857 (2003).

However, in order

> [t]o prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.

N.C. R. App. P. 2 (2019). "Rule 2 relates to the residual power of our appellate courts to consider, *in exceptional circumstances*, significant issues of importance in the public interest or to prevent injustice which appears manifest to the Court *and only in such instances*." *State v. Campbell*, 369 N.C. 599, 603, 799 S.E.2d 600, 602 (2017) (emphasis in original) (citation omitted).

"[A] decision to invoke Rule 2 and suspend the appellate rules is always a discretionary determination." *State v. Bursell* ("*Bursell II*"), 372 N.C. 196, 201, 827 S.E.2d 302, 306 (2019) (internal marks and citation omitted). "A court should consider whether invoking Rule 2 is appropriate in light of the specific circumstances of individual cases and parties, such as whether substantial rights of an appellant are affected." *Id.* at 200, 827 S.E.2d at 305 (internal marks and citation omitted).

Because of its discretionary and fact-specific nature, Rule 2 is not applied mechanically. *Campbell*, 369 N.C. at 603, 799 S.E.2d at 603 ("[P]recedent cannot create an automatic right to review via Rule 2.").

That being said, Justice Newby's opinion in *Bursell II* is instructive in our exercise of discretion here. *Bursell II* affirmed our Court's invocation of Rule 2 in *State v. Bursell* ("*Bursell I*"), 258 N.C. App. 527, 813 S.E.2d 463 (2018), *aff'd in part, rev'd in part,* 372 N.C. 196, 827 S.E.2d 302 (2019), noting the panel's examination of "the specific circumstances of the individual case and parties." *Bursell II*, 372 N.C. at 201, 827 S.E.2d at 306 (internal marks and citation omitted). Specifically, *Bursell I* considered whether the case involved a substantial right as well as "[the] defendant's [] age, the particular factual bases underlying [the charge or charges], and the nature of those offenses, combined with the State's and the trial court's failures to follow well-established precedent in applying for and imposing SBM, and the State's concession of reversible *Grady* error." *Id.* (quoting *Bursell I*, 258 N.C. App. at 533, 813 S.E.2d at 467). Though they are not determinative in the exercise of our discretion, we consider these factors below and conclude that invoking Rule 2 to consider Defendant's constitutional claim is appropriate here.

First, as Justice Newby noted, "the Fourth Amendment right implicated [by the imposition of SBM] is a substantial right." *Id.*

Second, these cases bear many factual similarities. In *Bursell I*, the 20-year-old defendant pleaded guilty to statutory rape and indecent liberties with a child after having sex with a 13-year-old girl. 258 N.C. App. at 528, 813 S.E.2d at 464. Defendant here was convicted of three counts of statutory rape of a child, two counts of committing a statutory sex offense with a child, and three counts of taking indecent liberties with a child when he, at 21 years old, had sex with two 12-year-old girls. In both *Bursell I* and the case sub judice, the trial court found the defendants had committed aggravated offenses. *Id.* at 529, 813 S.E.2d at 465. Therefore, Defendant's age, the factual bases underlying the charges, and the nature of the offenses are all comparable to those in *Bursell*.

In *Bursell I*, our Court considered that the trial court and the State had the benefit of our Court's precedent in *State v. Blue*, 246 N.C. App. 259, 783 S.E.2d 524 (2016), and *State v. Morris*, 246 N.C. App. 349, 783 S.E.2d 528 (2016), which "made clear that a case for SBM is the State's to make[.]" *Bursell I*, 258 N.C. App. at 533, 813 S.E.2d at 467 (internal marks and citation omitted). The trial court there "erred by not analyzing the totality of circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations before imposing SBM." *Id.* (internal marks and citation omitted). The trial court found at sentencing that the "defendant had committed an aggravating offense under the registration and SBM statutes, [and] it summarily concluded that

defendant require[d] the highest possible level of supervision and monitoring and ordered that he enroll in lifetime registration and be subject to lifetime SBM." *Id.* at 529, 813 S.E.2d at 465 (internal marks omitted).

Here, the trial court similarly summarily concluded that SBM should be imposed, without making any findings regarding the reasonableness of the search and without any evidence from the State. However, the State and the trial court here had the benefit of even more guidance regarding the State's burden than in *Bursell*. Indeed, *State v. Greene*, 255 N.C. App. 780, 806 S.E.2d 343 (2017), *State v. Grady* ("*Grady II*"), 259 N.C. App. 664, 817 S.E.2d 18 (2018), *aff'd as modified*, 372 N.C. 509, 831 S.E.2d 542 (2019) ("*Grady III*"), *State v. Griffin*, 260 N.C. App. 629, 818 S.E.2d 336 (2018), and *State v. Gordon* ("*Gordon I*"), 261 N.C. App. 247, 820 S.E.2d 339 (2018), all were published prior to Defendant's sentencing hearing. These cases make clear that the trial court must conduct a hearing to determine the constitutionality of ordering a defendant to enroll in the SBM program, and that the State bears the burden of proving the reasonableness of the search. *Greene*, 255 N.C. App. at 782, 806 S.E.2d at 345; *Grady II*, 259 N.C. App. at 676, 817 S.E.2d at 28; *Griffin*, 260 N.C. App. at 635, 818 S.E.2d at 341; *Gordon I*, 261 N.C. App. at 253-54, 820 S.E.2d at 344. By the time the trial court imposed SBM here, there were two and a half years' more precedent beyond that which existed at the time of our decision in *Bursell I*, further underlining the appropriate procedure and the State's burden.

The State here has not, as it did in *Bursell I*, conceded that the trial court's failure to conduct a hearing to determine the reasonableness of the search before imposing SBM constitutes error. *See Bursell I*, 258 N.C. App. at 533, 813 S.E.2d at 467. Instead, the State argues that our Supreme Court's decision in *Grady III* does not apply to this case because Defendant does not fall within the category of defendants at issue in *Grady III*: recidivists who have completed their sentence and are not under State supervision. But our Court explicitly rejected the State's argument that *Grady III*'s analysis carries no water with regard to defendants who fall outside of that category in *State v. Griffin* ("*Griffin II*"), ___ N.C. App. ___, ___ S.E.2d ___, 2020 WL 769356 (2020):

> Defendant's circumstances place him outside of the facial aspect of *Grady III*'s holding; he is not an unsupervised recidivist subject to mandatory lifetime SBM[.] . . . Plainly, then, *Grady III*'s holding does not directly determine the outcome of this appeal.
>
> Although *Grady III* does not compel the result we must reach in this case, its reasonableness analysis does provide us with a roadmap to get there. . . . *Grady III* offers guidance as to what factors to consider in determining whether SBM is reasonable under the totality of the circumstances. We thus resolve this appeal by reviewing Defendant's privacy interests and the nature of SBM's intrusion into them before balancing those factors against the State's interests in monitoring Defendant and the effectiveness of SBM in addressing those concerns.

2020 WL 769356, at *5-6; *see also State v. Gordon* ("*Gordon II*"), ___ N.C. App. ___, ___, ___ S.E.2d ___, ___, 2020 WL 1263993, at *5-6 (2020) (utilizing *Grady III*

- 21 -

similarly in its analysis).  In exercising our discretion, we are not swayed by an argument we have already rejected.

With due consideration of these *Bursell* factors, we invoke Rule 2 and reach the merits of Defendant's appeal.

### ii. Merits

After determining that a criminal defendant falls into one of the statutory categories that requires the imposition of SBM, *see* N.C. Gen. Stat. § 14-208.40(a)(1)-(3) (2019), "the trial court must conduct a hearing in order to determine the constitutionality of ordering the targeted individual to enroll in the [SBM] program[,]" *Gordon II*, 2020 WL 1263993, at *1.  That determination "depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations."  *Grady I*, 575 U.S. at 310, 135 S. Ct. at 1371.  The trial court must weigh the State's "interest in solving crimes that have been committed, preventing the commission of sex crimes, [and] protecting the public[,]" *Grady III*, 372 N.C. at 545, 831 S.E.2d at 568, against SBM's "deep . . . intrusion upon [an] individual's protected Fourth Amendment interests[,]" *id.* at 538, 831 S.E.2d at 564.  The State bears the burden of "showing . . . that the [SBM] program furthers [the State's] interest[s.]"  *Id.* at 545, 831 S.E.2d at 568.  And where, as here, it seeks the imposition of future SBM following a defendant's serving a prison sentence, the State also must "demonstrat[e] what [a

d]efendant's threat of reoffending will be after having been incarcerated for" the duration of his sentence with some "individualized measure of [the d]efendant's threat of reoffending." *Gordon II*, 2020 WL 1263993, at \*6 (concluding that the State did not meet its burden of proving the reasonableness of "a search of this magnitude approximately fifteen to twenty years in the future").

Here, after the jury rendered its verdicts, the trial court sentenced Defendant to 300 to 420 months of active imprisonment. The trial court then ordered SBM as follows:

> Turning to form 615, the defendant having been convicted of a reportable conviction, Court finds this is a sexually violent offense. Court finds the defendant has not been classified as a sexually violent predator. The Court finds that the defendant is not a recidivist. . . . [T]hese findings are applicable for the statutory rape of a child by an adult and statutory sex offense of a child by an adult, not to taking indecent liberties with a child. The Court finds that the offense of—the convictions of statutory rape and sex offense of a child by an adult is an aggravated offense or are aggravating offenses and that this did involve the sexual abuse of a minor. Pursuant to these findings, the Court hereby orders that the defendant shall register as a sex offender for his natural life, and the Court further orders that he shall enroll in satellite-based monitoring for his natural life upon his release.

> Turning to the form 615 for the taking indecent liberties with a child, Court finds that the defendant has been convicted of a reportable conviction, this being a sexually violent offense. Defendant has not been classified as a sexually violent predator. The defendant is not a recidivist. That the offense or conviction is not an aggravated offense. That the offense did involve the sexual abuse of a minor. The Court hereby orders that the

> defendant shall register as a sex offender for the taking indecent liberties with a child for a period of 30 years, and based on marking Block 2C on the satellite-based monitoring, pursuant to finding 5A, the Court orders that the Division of Adult Corrections shall perform a risk assessment of the defendant and report the results to the Court, and then he will be ordered to appear before the Court at a session later to be determined—for determination for satellite-based monitoring for these offenses, and specifically for taking indecent liberties with a child, those three counts.

In sum, the trial court determined that the offenses of which Defendant was convicted were reportable convictions pursuant to N.C. Gen. Stat. § 14-208.6(4) and that Defendant's convictions of statutory rape of a child by an adult and statutory sex offense are sexually violent offenses and aggravated offenses involving the sexual abuse of a minor. Section 14-208.40A(c) requires that defendants convicted of sexually violent offenses or aggravated offenses be subject to SBM. N.C. Gen. Stat. § 14-208.40A(c) (2019).

However, the above was the entirety of the trial court's SBM consideration. The State presented no evidence or testimony at the sentencing hearing regarding the reasonableness of the search entailed by SBM in general or in this instance. And the trial court made no findings regarding the reasonableness of the search, let alone its reasonableness when Defendant is released in 25 to 35 years. Such consideration is constitutionally obligatory. *See, e.g., Gordon II*, 2020 WL 1263993, at *6.

We therefore hold that the trial court order imposing SBM pursuant to N.C. Gen. Stat. § 14-208.40(a) is unconstitutional as applied to Defendant and must be

- 24 -

vacated. *See Bursell I*, 258 N.C. App. at 534, 813 S.E.2d at 468 ("Because no *Grady* hearing was held before the trial court imposed SBM, we vacate its order without prejudice to the State's ability to file a subsequent SBM application."); *Bursell II*, 372 N.C. at 201, 827 S.E.2d at 306 (affirming this Court's decision in *Bursell I* to vacate the trial court's SBM order without prejudice).

## IV. Conclusion

Because we conclude that Defendant was not prejudiced by any remarks made by the prosecutor in closing argument given the evidence of guilt presented by the State, we conclude that Defendant received a trial free from prejudicial error. However, because the trial court failed to hold a *Grady* hearing to determine the reasonableness of lifetime SBM for Defendant, we vacate the imposition of lifetime SBM without prejudice to the State's ability to file a subsequent SBM application.

NO ERROR IN PART; VACATED IN PART.

Judge ZACHARY concurs.

Judge TYSON concurs in the result in part and dissents in part by separate opinion.

TYSON, Judge, concurring in the result in part and dissenting in part.

Defendant failed to preserve or to carry his burden on appeal to show reversible error occurred in the State's closing argument. I concur in the result with the portion of the majority's opinion finding no error in Defendant's convictions and sentence.

## I. No Jurisdiction Invoked

Defendant failed to file a notice of appeal from the imposition of SBM as is required under North Carolina Rule of Appellate Procedure 3 to invoke appellate jurisdiction and review. N.C. R. App. P. 3; *see State v. Brooks*, 204 N.C. App. 193, 693 S.E.2d 204 (2010) (requiring written notice of appeal filed under N.C. R. App. P. 3 for review of SBM orders). As such, his appeal of the imposition of SBM is properly dismissed. I respectfully dissent from the majority opinion's review or analysis of the SBM order.

Recognizing appellate review of this claim is otherwise barred, Defendant filed a petition for writ of certiorari to invoke this Court's jurisdiction and seek appellate review of the civil order imposing his lifetime enrollment in SBM. To trigger this Court's discretion to allow the petition and issue the writ, Defendant's "petition for this writ [of certiorari] must show merit or that error was probably committed below." *State v. Grundler*, 251 N.C. 177, 189, 111 S.E.2d 1, 9 (1959) (citation omitted).

## II. No Preservation of Constitutional Error

Appellate Rule 10 mandates that in order for Defendant "to preserve an issue for appellate review, a party must have presented to the trial court a timely request,

objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1).

Defendant failed to raise any constitutional challenge or otherwise preserve this constitutional claim in violation of Appellate Rule 10 at any point during his sentencing hearing. *See id.* Asserted constitutional errors that were not raised, argued and ruled upon before the trial court cannot be raised for the first time on appeal. *State v. Bishop*, 255 N.C. App. 767, 770, 805 S.E.2d 367, 370 (2017).

## III. Rule 2

Defendant concedes he had failed to challenge or preserve any objection to the constitutionality of the imposition of lifetime SBM. His failure to preserve the issue bars appellate review. *State v. Valentine*, 357 N.C. 512, 525, 591 S.E.2d 846, 857 (2003) ("The failure to raise a constitutional issue before the trial court bars appellate review. N.C. R. App. P. 10(b)(1); *State v. Wiley*, 355 N.C. 592, 624, 565 S.E.2d 22, 44-45 (2002), *cert. denied*, 537 U.S. 1117, 154 L. Ed. 2d 795 (2003); *State v. Golphin*, 352 N.C. 364, 411, 533 S.E.2d 168, 202 (2000), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001). Based upon our long-established law, defendant has waived this issue, and he is barred from raising it on appellate review before this Court. This assignment of error is dismissed."). He requests this Court to exercise its discretion

to invoke Rule 2 of the North Carolina Rules of Appellate Procedure to reach the merits of his claims. N.C. R. App. P. 2.

"Rule 2 relates to the residual power of our appellate courts to consider, *in exceptional circumstances*, significant issues of importance in the public interest or to prevent injustice which appears manifest to the Court *and only in such instances*." *State v. Campbell*, 369 N.C. 599, 603, 799 S.E.2d 600, 602 (2017) (emphasis original) (citation omitted). This Court's invocation of the Rule is wholly discretionary and "precedent cannot create an automatic right of review via Rule 2." 369 N.C. at 603, 799 S.E.2d at 603.

The facts in this case mirror those in *State v. Bishop*, wherein the defendant was convicted of taking indecent liberties with a child and the trial court had imposed SBM for a term of thirty years. 255 N.C. App. at 768, 805 S.E.2d at 368. The defendant had not raised any constitutional issue before the trial court, could not raise it for the first time on appeal, and had waived this argument on appeal. *Id.* at 770, 805 S.E.2d at 370.

As here, the defendant in *Bishop* requested this Court invoke Rule 2 of the North Carolina Rules of Appellate Procedure to hear his arguments and review his constitutional challenge. *Id.* This Court held the defendant was "no different from other defendants who failed to preserve their constitutional arguments in the trial court, and because he has not argued any specific facts that demonstrate manifest

injustice if we decline to invoke Rule 2, we do not believe this case is an appropriate use of that extraordinary step." *Id.* Defendant has failed to demonstrate any reason why this Court should treat his challenge any differently from what it did in *Bishop.* *Id.*; *see In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").

In *State v. Hart*, our Supreme Court warned of unwanted implications of our State's courts not uniformly applying the Rules of Appellate Procedure:

> Fundamental fairness and the predictable operation of the courts for which our Rules of Appellate Procedure were designed depend upon the consistent exercise of this authority. Furthermore, inconsistent application of the Rules may detract from the deference which federal habeas courts will accord to their application. Although a petitioner's failure to observe a state procedural rule may constitute an adequate and independent state ground[] barring federal habeas review. a state procedural bar is not adequate unless it has been consistently or regularly applied. Thus, if the Rules [of Appellate Procedure] are not applied consistently and uniformly, federal habeas tribunals could potentially conclude that the Rules are not an adequate and independent state ground barring review. Therefore, it follows that our appellate courts must enforce the Rules of Appellate Procedure uniformly.

*State v. Hart,* 361 N.C. 309, 317, 644 S.E.2d 201, 206 (2007) (internal citations and quotations omitted).

## IV. <u>No Showing of Merit</u>

Defendant's status does not fall within the category of defendants at issue in *Grady III*, that is, recidivists who have completed their sentence and are no longer under any State supervision. *See Grady v. North Carolina,* 575 U.S. 306, 191 L. Ed. 2d 459 (2015); *State v. Grady,* 372 N.C. 509, 831 S.E.2d 542 (2019) ("*Grady III*").

The trial court must weigh the State's legitimate and compelling "interest in solving crimes that have been committed, preventing the commission of sex crimes, [and] protecting the public[,]" particularly, as here, where there are multiple young minor victims. *Grady III*, 372 N.C. at 545, 831 S.E.2d at 568.

By striking the entire order, the majority's opinion improperly extends *State v. Griffin,* ___ N.C. App. ___, ___ S.E.2d ___, 2020 WL 769356 (2020). In *Griffin*, the defendant did not challenge the imposition of SBM during his post-release supervision. *Id.* at *6. *Griffin* properly recognizes SBM as a special needs search during this period. *Id.*

Here, the trial court properly found the offenses the jury unanimously convicted Defendant of committing were reportable convictions pursuant to N.C. Gen. Stat. § 14-208.6. Defendant's convictions of statutory rape of a child by an adult and statutory sex offense are sexually violent and aggravated offenses involving the sexual abuse of a minor.

Our General Assembly enacted N.C. Gen. Stat. § 14-208.40A(c), which mandates defendants convicted of sexually violent offenses or aggravated offenses to

be subject to Satellite Based Monitoring. N.C. Gen. Stat. § 14-208.40A(c) (2019). This legislative choice has withstood and survived constitutional scrutiny. *Grady v. North Carolina,* 575 U.S. 306, 310, 191 L. Ed. 2d 459; *Grady III,* 372 N.C. 509, 831 S.E.2d 542.

To meet the statutory mandate and without any argument or objection from Defendant, the trial court, in open court and in the presence of the Defendant and his counsel, made the following findings of fact under the statute:

> Turning to form 615, the defendant having been convicted of a reportable conviction, Court finds this is a sexually violent offense. Court finds the defendant has not been classified as a sexually violent predator. The Court finds that the defendant is not a recidivist. . . . these findings are applicable for the statutory rape of a child by an adult and statutory sex offense of a child by an adult, not to taking indecent liberties with a child. The Court finds that the offense of—the convictions of statutory rape and sex offense of a child by an adult is an aggravated offense or are aggravating offenses and that this did involve the sexual abuse of a minor. Pursuant to these findings, the Court hereby orders that the defendant shall register as a sex offender for his natural life, and the Court further orders that he shall enroll in satellite-based monitoring for his natural life upon his release.

> Turning to the form 615 for the taking indecent liberties with a child, Court finds that the defendant has been convicted of a reportable conviction, this being a sexually violent offense. Defendant has not been classified as a sexually violent predator. The defendant is not a recidivist. That the offense or conviction is not an aggravated offense. That the offense did involve the sexual abuse of a minor. The Court hereby orders that the defendant shall register as a sex offender for the taking indecent liberties with a child for a period of 30 years, and

> based on marking Block 2C on the satellite-based monitoring, pursuant to finding 5A, the Court orders that the Division of Adult Corrections shall perform a risk assessment of the defendant and report the results to the Court, and then he will be ordered to appear before the Court at a session later to be determined—for determination for satellite-based monitoring for these offenses, and specifically for taking indecent liberties with a child, those three counts.

Having failed to object at his sentencing hearing, Defendant unlawfully attempts to raise a constitutional violation for the first time on appeal. *Bishop*, 255 N.C. App. at 770, 805 S.E.2d at 370. Defendant has not demonstrated any prejudice to merit issuance of the writ. *Grundler*, 251 N.C. at 189, 111 S.E.2d at 9.

Even if we were to agree the trial court failed to hold an extended *Grady* hearing to make further reasonableness findings of lifetime SBM for Defendant *ex mero moto*, that decision is not fatal to vacate the SBM order. In the absence of any demand or objection from Defendant or showing of merit, both his petition for writ of certiorari to invoke jurisdiction to remediate his failure to comply with Appellate Rule 3, or to invoke Appellate Rule 2 to excuse Defendant's failure to comply with Appellate Rule 10 are both properly denied. *See Bishop,* 255 N.C. App. at 770, 805 S.E.2d at 370; *Campbell*, 369 N.C. at 603, 799 S.E.2d at 602.

The entirety of Defendant's arguments on appeal, to excuse his lack of notice of appeal and failure to present and preserve his constitutional challenge, is to assert his notion of a proper role of the trial court and for this Court is to sit as a "second chair" to his defense counsel, or for both courts to act on our own motions solely for

his benefit. This notion is not the proper role of either the trial or appellate divisions of the Judicial Branch. "[I]t's [the judge's] job to call balls and strikes and not to pitch or bat." Confirmation Hearing on the Nomination of John G. Roberts, Jr. to be Chief Justice of the United States: Hearing Before the Committee on the Judiciary United States Senate, 109 Cong. 56 (Statement of John G. Roberts, Jr.). "It is not the role of the appellate courts . . . to create an appeal for an appellant." *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005).

Defendant cannot raise a constitutional argument for the first time on appeal. *Bishop*, 255 N.C. App. at 770, 805 S.E.2d at 370. Defendant's petition for writ of certiorari is without merit and is properly denied. *Grundler*, 251 N.C. at 189, 111 S.E.2d at 9. His argument for this Court to exercise our discretion to invoke Rule 2 to overcome his failure to comply with Rule 10 is without merit. *Campbell*, 369 N.C. at 603, 799 S.E.2d at 602.

## V. Conclusion

Defendant's convictions and sentence are all properly affirmed as he has failed to preserve or demonstrate either error or prejudice. I concur in the result to find no error in his jury's convictions or in the sentence entered thereon.

Defendant's failure to appeal from or to preserve his purported challenge to his SBM order on constitutional grounds mandates dismissal. His constitutional challenge was neither presented, preserved, and nor ruled upon by the trial court.

*TYSON, J., concurring in the result in part and dissenting part*

Defendant is barred from raising these issues for the first time on appeal. I respectfully dissent.